BELTRAMI, J.,
This case is before the court on “defendant Denise F. Lipsky’s preliminaiy objections to plaintiffs’ amended complaint,” filed on January 2, 2014, and the “preliminary objections of defendants Joseph Piperato, III and Benner & Piperato to plaintiffs’ amended complaint,” filed on June 23, 2014.[1] Briefs have been submitted, oral argument was heard, and the matters are ready for disposition.
On December 13, 2013, plaintiffs filed their amended complaint, which alleges the following facts. On or about October 14,2011, plaintiff Lawrence Marra, Jr. (“Marra”) entered into an agreement of sale (“agreement”) with Lipsky to purchase, from Lipsky, a lot on a parcel of land *413 (“property”) for $200,000.00. (Am. Compl. ¶ 9, Ex. A.) At the time, Marra was the business partner of plaintiff Steven J. Miga (“Miga”). (Id. ¶ 7.) Marra and Miga’s intent was to use the property to sell cars. (Id. ¶ 10.) Pursuant to the terms of the agreement, Marra paid Lipsky a deposit of $5,000.00 on October 17, 2011. (Id. ¶ 12.) The sale of the property was contingent on Marra successfully obtaining zoning approval to sell cars on the property. (Id. ¶ 13.) The sale of the property was to be finalized on April 15, 2012, unless zoning approval was not obtained by that date, in which case the settlement date would be extended six months to October 15, 2012. (Id. ¶¶ 14-15.)
In February 2012, plaintiffs retained defendant Joseph Piperato, III, Esquire (“attorney Piperato”) to represent them in the purchase of the property and their application for zoning approval. (Id. ¶ 16.) In the spring of 2012, plaintiffs applied to the Lower Nazareth Township Zoning Board for approval to convert part of a home on the property into a sales office for the intended business. (Id. ¶ 17.) A zoning hearing took place, at which testimony was presented that Lipsky would grant plaintiffs an easement to store cars on a lot adjacent to the property if zoning approval for the property was granted. (Id.) However, the zoning hearing had to be continued to a date when the zoning board would have the necessary quorum to vote on the application. (Id. ¶ 18.) Thereafter, Lipsky represented that she would not, in fact, grant a permanent easement but, rather, only a five-year easement. (Id. ¶ 19.) As a result, on April 4,2012, Marra informed Miga and attorney Piperato that he planned to rescind the agreement due to Lipsky’s change of heart. (Id. ¶ 20.) Marra drafted a letter to this end, addressed to Lipsky, but never sent it to her. (Id. ¶ *414 21.) According to plaintiffs, attorney Piperato disclosed the contents of the letter to Lipsky without their consent. (Id. ¶ 22.)
While Marra no longer intended to purchase the property, Miga did. (Id. ¶ 23.) Accordingly, on April 5, 2012, Marra assigned his rights under the agreement to Miga. (Id. ¶ 24, Ex. D.) However, on or about July 3,2012, Lipsky sold the property to a third party named Patrick M. Hughes. (Id. ¶ 26, Ex. F.) On July 13, 2012, Lipsky returned Marra’s $5,000.00 deposit to him along with a message that read: “Pursuant to your letter from 4/4/12 rescinding our agreement of sale dated 10/14/11, enclosed please find a check for $5,000.00 representing the return of your deposit on the agreement rescinded by you.” (Id. ¶¶ 27-28, Ex. G.) In August 2012, attorney Piperato disclosed to Marra that he had drafted the agreement of sale between Lipsky and Hughes. (Id. ¶ 29.)
Plaintiffs’ amended complaint contains four counts. In Counts I and II, plaintiffs assert breach of contract and fraud claims, respectively, against Lipsky. In Counts III and IV, plaintiffs state legal malpractice and breach of fiduciary duty claims, respectively, against attorney Piperato and his law firm.[2] The court will first address those of defendants’ objections which overlap.
Lipsky and attorney Piperato both object to the amended complaint’s failure to include a verification, as required by Pennsylvania Rule of Civil Procedure 1024. On January 16, 2014, plaintiffs filed a praecipe to attach *415 a verification to the amended complaint, rendering these objections moot.
Lipsky and attorney Piperato also object on the ground that plaintiffs’ requests for attorney’s fees and punitive damages are improper. Plaintiffs request attorney’s fees in all counts and punitive damages in all counts but Count I, the breach of contract claim against Lipsky. The court views these objections as being based upon the “inclusion of. . . impertinent matter.” Pa.R.C.P. No. 1028(a)(2). To be impertinent, “the allegations must be immaterial and inappropriate to the proof of the cause of action.” Common Cause/Pa. v. Commonwealth, 710 A.2d 108, 115 (Pa. Commw. 1998). A party includes impertinent matter in a pleading by making an inappropriate request for damages. Hudock v. Donegal Mut. Ins. Co., 264 A.2d 668, 671 n.2 (Pa. 1970).
In Hutchison ex rel. Hutchison v. Luddy, 870 A.2d 766, 770-71 (Pa. 2005), the Pennsylvania Supreme Court stated:
The standard governing the award of punitive damages in Pennsylvania is settled. “Punitive damages may be awarded for conduct that is outrageous, because of the defendant’s evil motive or his reckless indifference to the rights of others.” Feld v. Merriam, 506 Pa. 383, 485 A.2d 742, 747 (1984) (quoting Restatement (Second) of Torts § 908(2) (1979)); see also Chambers v. Montgomery, 411 Pa. 339, 192 A.2d 355, 358 (1963). As the name suggests, punitive damages are penal in nature and are proper only in cases where the defendant’s actions are so outrageous as to demonstrate willful, wanton or reckless conduct. See SHV Coal, Inc. *416 v. Continental Grain Co., 526 Pa. 489, 587 A.2d 702, 704 (1991); Feld, 485 A.2d at 747-48; Chambers, 192 A.2d at 358. See also Restatement (Second) of Torts § 908, comment b. The purpose of punitive damages is to punish a tortfeasor for outrageous conduct and to deter him or others like him from similar conduct. Kirkbride v. Lisbon Contractors, Inc., 521 Pa. 97, 555 A.2d 800, 803 (1989); Restatement (Second) of Torts § 908 (1) (“Punitive damages are damages, other than compensatory or nominal damages, awarded against a person to punish him for his outrageous conduct and to deter him and others like him from similar conduct in the future.”). Additionally, this court has stressed that, when assessing the propriety of the imposition of punitive damages, “[t]he state of mind of the actor is vital. The act, or the failure to act, must be intentional, reckless or malicious.” See Feld, 485 A.2d at 748; see also Martin v. Johns-Manville Corp., 508 Pa. 154, 494 A.2d 1088, 1097 n. 12 (1985) (plurality opinion).
With regard to Count III of the amended complaint, plaintiffs’ legal malpractice claim against attorney Piperato, the court notes that
[i]n Rizzo [v. Haines, 555 A.2d 58, 69 (Pa. 1989)], the [Pennsylvania Supreme] Court found that punitive damages were available on a legal malpractice claim. The attorney had used his position to persuade his client to transfer to the attorney the proceeds of a sanctions order awarded to the client by the trial judge due to the attorney’s misconduct. The attorney secured this transfer after intentionally withholding the judge’s findings of misconduct, in order to evade her ruling. He also told the client that he needed the money to pursue *417 the client’s legal claims that proved meritless. These breaches of fiduciary duty, intentional withholding of critical information and fraudulent misrepresentation, the court found, were more than sufficient to justify a punitive damage award.
Meyers v. Sudfeld, No. 05-CV-2970, 2007 WL 419182, at *12 (E.D. Pa. Feb. 2, 2007) (citation omitted). In Meyers, the District Court, applying Pennsylvania law, found that a legal malpractice claim which essentially complained of “bad legal advice” was insufficient as a matter of law to give rise to punitive damages. Id. at *13.
Here, plaintiffs allege that attorney Piperato committed malpractice by:
(a) Failing to provide appropriate and necessary legal advice to plaintiffs;
(b) Failing to completely and clearly advise plaintiffs [of] the status of their transaction;
(c) Misrepresenting to plaintiffs by offering numerous assurances that the agreement of sale was not in jeopardy;
(d) Representing both buyers and seller in a clear conflict of interests;
(e) Disclosing confidential information;
(f) Failing to secure plaintiffs’ zoning board approval as well as the underlying purchase; and
(g) Other conduct that deviated from the applicable *418 standard of care.[3]
(Am. Compl. ¶ 42.) Allegations (a), (b), (d), (e), and (f) are all allegations of either “bad legal advice” or of conduct that may constitute a violation of the rules of professional conduct. However, allegation (c), taken as true and viewed “together with all the circumstances including the motive of the wrongdoers and the relations between the parties[,]” including attorney Piperato’s representation of Hughes in the purchase of the property while Miga was, arguably, still his client and a party to the contract with Lipsky, alleges something beyond mere faulty legal representation. Feld v. Merriam, 485 A.2d 742, 748 (Pa. 1984) (quoting Chambers v. Montgomery, 192 A.2d 355, 358 (Pa. 1963)). Because punitive damages are available in legal malpractice actions, and because plaintiffs allege a factual predicate marginally sufficient to give rise to the same, the court will not remove punitive damages, as a matter of law, at this early stage of the proceedings. Thus, attorney Piperato’s objection to plaintiffs’ request for punitive damages in Count III will be overruled. Further, because Count IV is based on the same alleged conduct identified in Count III, and the standard for awarding punitive damages in a breach of fiduciary duty claim does not differ from that in a legal malpractice claim, attorney Piperato’s objection to plaintiffs’ request for punitive damages in Count IV will also be overruled. The court will address infra Lipsky’s objection to plaintiffs’ request for punitive damages in Count II, the fraud claim against Lipsky.
*419 Lipsky and attorney Piperato each object to plaintiffs’ requests for attorney’s fees in all counts. “The general rule is that the parties to litigation are responsible for their own counsel fees and costs unless otherwise provided by statutory authority, agreement of parties, or some other recognized exception.” Cresci Const. Services, Inc. v. Martin, 64 A.3d 254, 266 (Pa. Super. 2013) (quoting Cher-Rob, Inc. v. Art Monument Co., 594 A.2d 362, 363 (Pa. Super. 1991)). As there is no statutory authority, agreement of the parties, or other recognized exception to the general rule in this case, plaintiffs’ requests for attorney’s fees are impertinent and will be stricken.
In his second, third, and fourth objections, attorney Piperato moves to strike paragraph 31 of plaintiffs’ amended complaint, which states that “defendants are liable to plaintiffs, directly, indirectly, contractually, expressly, implicitly, as a matter of law and/or vicariously, including but not limited to liability via a third-party beneficiary relationship, and/or via conspiring and/or aiding and abetting.” (Am. Compl. ¶ 31.) In his second and third objections, attorney Piperato argues that plaintiffs’ references to a “third-party beneficiary relationship” and “conspiring,” without further elaboration, are insufficiently specific and should be stricken. In his fourth objection, attorney Piperato argues that plaintiffs’ “general allegations of negligence” in paragraphs 31 and 42(g) are also insufficiently specific. (Attorney Piperato’s Br. at 5-6.) However, paragraph 31 contains no such allegations of general negligence. Thus, the court will overrule the fourth objection of attorney Piperato as it relates to paragraph 31. As noted above, the parties agree that paragraph 42(g) of the amended complaint can be stricken.
*420 As to attorney Piperato’s second and third objections, the relevant question is whether the amended complaint is adequately clear to allow attorney Piperato to set up his defense, or whether the amended complaint informs him, with precision, of the basis on which recovery is sought so that he may know, without question, the grounds upon which to assert a defense. Rambo v. Greene, 906 A.2d 1232, 1236 (Pa. Super. 2006). In determining whether a particular paragraph is stated with the necessary specificity, that paragraph must be read in the context of all of the allegations made in the complaint. Unified Sportsmen of Pa. v. Pa. Game Com’n (PGC), 950 A.2d 1120, 1134 (Pa. Commw. 2008). In ruling on a motion to strike for insufficient specificity under Rule 1028(a)(3), the court may “eliminate any broad or ambiguous allegations from a complaint.” Lawrence v. Malloy, 74 Pa. D. & C.4th 361, 376 (C.P. of Lackawanna Cnty. 2005). Paragraph 31 fits this description. The paragraph alleges various grounds on which defendants are potentially liable. This determination is for a jury to make, with the aid of the court’s legal instructions. Rather than a proper allegation of material facts, paragraph 31 contains improper legal conclusions and is insufficiently specific. Accordingly, attorney Piperato’s second and third objections will be sustained, and Paragraph 31 will be stricken from the amended complaint.[4]
Attorney Piperato’s fifth objection is based upon the *421 failure of the amended complaint to conform to Rule 1019(a), which states: “The material facts on which a cause of action or defense is based shall be stated in a concise and summary form.” Pa.R.C.P. No. 1019(a). More specifically, attorney Piperato argues that plaintiffs’ use of the terms “recklessly” and “recklessness” in paragraphs 42 and 44, respectively, violates this rule. However, plaintiffs do set forth the material facts on which Count III is based in concise and summary form, in accordance with Rule 1019(a). The terms “recklessly” and “recklessness” are presumably included in connection with plaintiffs’ request for punitive damages in Count III which, as discussed previously, is not an impertinent request. Therefore, there has been no violation of Rule 1019(a), and attorney Piperato’s fifth objection will be overruled.
The court next turns to Lipsky’s remaining objections. First, in her third objection, Lipsky argues that attorney Piperato’s communication to her that the agreement was to be rescinded effectively terminated the agreement, thus rendering plaintiffs’ breach of contract claim against her legally insufficient. The question presented by a demurrer is whether, on the facts pleaded, the law says, with certainty, that no recovery is possible. Orange Stones Co. v. City of Reading, 87 A.3d 1014, 1021 n.7 (Pa. Commw. 2014). The court must resolve a demurrer solely on the basis of the pleadings, without reference to testimony or other outside evidence. Hill v. Ofalt, 85 A.3d 540, 546 (Pa. Super. 2014). When considering a demurrer, the Court must accept, as true, all material facts averred in the challenged pleading, as well as all inferences that can be reasonably deduced therefrom. Schemberg v. Smicherko, 85 A.3d 1071, 1073 (Pa. Super. 2014).
*422 Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

Id.

Lipsky argues that when she sold the property to Hughes her agreement with Marra was no longer in existence because attorney Piperato had advised her that Marra was rescinding the agreement. Plaintiffs allege that Marra drafted a letter expressing his intention to rescind the contract and that attorney Piperato improperly disclosed the letter’s contents to Lipsky without their consent, causing her to believe the contract was terminated. (Am. Compl. ¶¶ 20-22.) However, neither the letter and its contents, nor the exact alleged communication of the same to Lipsky by attorney Piperato, are contained in the pleadings. Without access to either the actual language used in the letter or the portion thereof communicated to Lipsky by attorney Piperato, it is impossible for the court to determine whether the communication was sufficiently specific to constitute a repudiation of or termination of the agreement. Thus, it is not clear and free from doubt whether Lipsky’s obligations to plaintiffs under the agreement had been terminated at the time she sold the property to Hughes. As a result, Lipsky’s demurrer to Count I must be overruled.
In her fourth objection, Lipsky asserts a demurrer to plaintiffs’ fraud claim based on three theories: (1) that *423 plaintiffs have failed to state a prima facie case of fraud; (2) that the gist of the action doctrine bars plaintiffs’ fraud claim; and (3) that plaintiffs’ fraud claim is not pleaded with particularity. The court will analyze Lipsky’s second theory first.
The gist of the action doctrine was recognized by the Superior Court for the first time in Bash v. Bell Tel. Co. of Pa., 601 A.2d 825 (Pa. Super. 1992). The doctrine is designed to enforce the conceptual distinctions between tort claims and breach of contract claims. eToll, Inc. v. Elias/Savion Adver., Inc., 811 A.2d 10, 14 (Pa. Super. 2002). “As a practical matter, the doctrine precludes plaintiffs from re-casting ordinary breach of contract claims into tort claims.” Id. The difference between contract claims and tort claims was explained in Bash as follows:
[A]lthough they derive from a common origin, distinct differences between civil actions for tort and contract breach have developed at common law. Tort actions lie for breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual consensus agreements between particular individuals.... To permit a promisee to sue his promisor in tort for breaches of contract inter se would erode the usual rules of contractual recovery and inject confusion into our well-settled forms of actions.
Bash, 601 A.2d at 829.
“[I]t is possible that a breach of contract also gives rise to an actionable tort[.] To be construed as in tort, however, the wrong ascribed to [the] defendant must be the gist of the action, the contract being collateral.” Id. (quoting *424 Closed Circuit Corp. of Am. v. Jerrold Elecs. Corp., 426 F.Supp. 361, 364 (E.D. Pa. 1977)). Atort claim should not be allowed when “the parties’ obligations are defined by the terms of the contract, and not by the larger social policies embodied by the law of torts.” Id. at 830. Stated another way, “[i]f the plaintiff must rely wholly on the agreement to define the rights that the defendant violated, the claim is generally a contract claim.” Greater Philadelphia Health Servs. II Corp. v. Complete Care Servs., L.P., 2000 WL 33711052, at *1 (Pa. Com. Pl. 2000). “Courts have generally invoked the gist of the action doctrine to bar a tort claim where the defendant negligently or intentionally breached a contract.” Id. at *2.
[Authority interpreting Pennsylvania law has restated the gist of the action doctrine in a number of similar ways. These courts have held that the doctrine bars tort claims: (1) “arising solely from a contract between the parties”; (2) where “the duties allegedly breached were created and grounded in the contract itself’; (3) where “the liability stems from a contract”; or (4) where the tort claim “essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract.”
These courts have not carved out a categorical exception for fraud, and have not held that the duty to avoid fraud is always a qualitatively different duty imposed by society rather than by the contract itself. Rather, the cases seem to turn on the question of whether the fraud concerned the performance of contractual duties. If so, then the alleged fraud is generally held to be merely collateral to a contract claim for breach of those duties. *425 If not, then the gist of the action would be the fraud, rather than any contractual relationship between the parties.
eToll, Inc., 811 A.2d at 19 (citations omitted).
If Lipsky’s sale to Hughes were the sole basis of plaintiffs’ fraud claim, there would be little question that the gist of the action doctrine bars that claim. However, plaintiffs clarify in their brief that their fraud claim concerns Lipsky’s representations regarding the easement rather than her sale of the property. In this regard, the representation alleged to have been fraudulent is not related to any term of the agreement and is collateral to duties created under the agreement itself. Nevertheless, the court is convinced that even if, as an alternate theory of liability, the factual essence of plaintiffs’ fraud claim is that Marra himself rescinded the agreement because of Lipsky’s fraud, the liability plaintiffs seek to impose is wholly dependent on the terms of the agreement. In other words, because plaintiffs’ fraud claim seeks to vindicate the loss of a right created by the agreement itself, the claim is, in essence, a duplication of plaintiffs’ breach of contract claim. Since it appears that both plaintiffs’ breach of contract and fraud claims against Lipsky seek redress for loss of the property, and plaintiffs’ only legal right to the property is created by and exists only within the four comers of the agreement, the gist of the action must be in breach of contract. For all of these reasons, Lipsky’s demurrer to plaintiffs’ fraud claim will be sustained, and Count II of the amended complaint will be dismissed.[5]
*426 Lipsky’s seventh objection asserts that Marra lacks standing to pursue a breach of contract claim against her in Count I of the amended complaint because he assigned his rights in the agreement to Miga prior to Lipsky’s sale of the property to Hughes. “An assignment is a transfer of property or some other right from one person to another, and unless in some way qualified, it extinguishes the assignor’s right to performance by the obligor and transfers that right to the assignee.” Emp ’rs Ins. of Wausau v. Commw., Dept. of Transp., 865 A.2d 825, 830 (Pa. 2005) (quoting Pentlong Corp. v. GLS Capital, Inc., 820 A.2d 1240, 1249 (Pa. 2003)).
[T]he Rules of Civil Procedure...require[] that all actions be prosecuted by the real party in interest. In an assignment, the nature of the particular assignment determines the identity of the real party. Ordinarily, an effective assignment is one by which the assignor’s right to performance by the obligor is extinguished and the assignee acquires a similar right to such performance. Therefore, the assignee is usually the real party in interest and an action on the assignment must be prosecuted in his name.
Wilcox v. Regester, 207 A.2d 817, 820 (Pa. 1965) (citations omitted).
Here, it is apparent that Marra did in fact assign his interest in the agreement to Miga prior to Lipsky’s sale to *427 Hughes. (See Am. Compl. Exs. D, F.) Therefore, Marra is not the real party in interest in Count I, Lipsky’s seventh objection will be sustained, and Marra’s breach of contract claim against Lipsky will be dismissed.
WHEREFORE, the court enters the following:
ORDER OF COURT
And now, this 23rd day of February, 2015, upon consideration of “defendant Denise F. Lipsky’s preliminary objections to plaintiffs’ amended complaint” and the “preliminary objections of defendants Joseph Piperato, III and Benner & Piperato to plaintiffs’ amended complaint,” it is hereby ordered that said preliminary objections are sustained, in part, and overruled, in part, as follows:
1. Paragraph 42(g) of plaintiffs’ amended complaint is hereby stricken;
2. Plaintiffs’ requests for attorney’s fees in Counts I, III, and IV of plaintiffs’ amended complaint are hereby stricken;
3. Paragraph 31 of plaintiffs’ amended complaint is hereby stricken;
4. Count II of plaintiffs’ amended complaint is hereby dismissed; and
5. Plaintiff Lawrence Marra, Jr.’s breach of contract claim against defendant Denise F. Lipsky, contained in Count I of plaintiffs’ amended complaint, is hereby dismissed.

. This action was originally filed in Lehigh County, where defendant Denise F. Lipsky (“Lipsky”) filed her instant preliminary objections raising, inter alia, improper venue. On April 7, 2014, the honorable J. Brian Johnson granted Lipsky’s venue objection and ordered that the case be transferred to Northampton County, deferring disposition of Lipsky’s remaining objections to this court.

. Any references to attorney Piperato in the remainder of this opinion refer to both attorney Piperato and his firm, Benner & Piperato, Attorneys at Law.

. At oral argument, the parties agreed that paragraph 42(g) of the amended complaint can be stricken as insufficiently specific.

. Attorney Piperato could have also asserted his second and third objections to paragraph 31 on the theory that the complained-of language constitutes impertinent and scandalous matter, as the amended complaint does not allege civil conspiracy, or on the theory that paragraph 31 fails to conform to law, as conclusions of law “have no place in a pleading.” DelConte v. Stefonick, 408 A.2d 1151, 1153 (Pa. Super. 1979).

. Because the court will dismiss Count II of the amended complaint, it need not address plaintiff’s demurrer to that count on the basis that plaintiffs have failed to plead the prima facie elements of *426 fraud or that such elements are not pleaded with particularity. Further, the court need not address Lipsky’s fifth objection, which argues that Count II is insufficiently specific. Likewise, the court need not address that portion of Lipsky’s seventh objection, as it relates to Count II, nor Lipsky’s eighth objection. Finally, the court need not address that portion of Lipsky’s ninth objection which argues that plaintiffs’ request for punitive damages in Count II is impertinent.