Karl SCHEMBERG, Jr., Appellant

v.

James SMICHERKO, Appellee.

Superior Court of Pennsylvania.

Argued July 9, 2013.

Filed Feb. 11, 2014.

John J. Stanzione, West Chester, for appellant.

Christine E. Munion, Blue Bell, for appellee.

BEFORE: MUNDY, OLSON and STRASSBURGER,* JJ.

OPINION BY STRASSBURGER, J.:

Karl Schemberg, Jr. (Plaintiff) appeals from the November 8, 2012 order which sustained the preliminary objections of James Smicherko (Defendant) and dismissed Plaintiff's complaint with prejudice. We reverse and remand for further proceedings consistent with this opinion.

The trial court summarized the facts and procedural history of this case as follows:

Plaintiff ... filed a complaint against [Defendant] for negligence *per se* and negligence. Plaintiff is a police officer for the Borough of Kutztown Police Department. Around midnight on February 17, 2012, while on duty, [P]laintiff observed [D]efendant urinating in public against the side of a private residence which [P]laintiff believed was not [D]efendant's private residence in violation of municipal ordinances and state laws. Defendant ran away to avoid [P]laintiff's investigation. [Plaintiff] pursued [D]efendant and eventually apprehended him not far from the area where he first saw [D]efendant urinating. The area of the pursuit was not well lit, and [P]laintiff fell from a height between twelve inches to fifteen inches while pursuing [D]efendant. Plaintiff sustained injuries to his right leg which required, *inter alia*, sur-

---

* Retired Senior Judge assigned to the Superior Court.

gery. Defendant pled guilty to violating the Borough of Kutztown ordinance prohibiting urination in public. Plaintiff contends in his complaint that [D]efendant committed negligence *per se* because he violated the ordinance of Kutztown Borough and 18 Pa.C.S.A. § 5104 which reads as follows:

A person commits a misdemeanor of the second degree if, with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance.

Defendant filed preliminary objections to the complaint contending that [P]laintiff was not able to prove claims of negligence *per se* and negligence. [The trial court] agreed with [D]efendant and sustained the preliminary objections.

Trial Court Opinion, 2/21/2013, at 1–2.

Plaintiff filed a timely notice of appeal, and both Plaintiff and the trial court complied with Pa.R.A.P. 1925. Plaintiff presents the following questions for our review:

A. DID THE TRIAL JUDGE ERR IN CONCLUDING THAT [PLAINTIFF] COULD NOT ESTABLISH A CLAIM FOR NEGLIGENCE OR NEGLIGENCE *PER SE* BECAUSE THE STATUTE VIOLATED BY [DEFENDANT] WAS NOT INTENDED TO PROTECT A SPECIFIC GROUP OF INDIVIDUALS AS OPPOSED TO THE GENERAL PUBLIC?

B. DID THE TRIAL JUDGE ERR IN CONCLUDING THAT [PLAINTIFF] COULD NOT ESTABLISH A CLAIM FOR NEGLIGENCE *PER SE* OR

NEGLIGENCE BECAUSE THE ACTIONS OF [DEFENDANT] WERE NOT THE PROXIMATE CAUSE OF THE INJURIES SUFFERED BY [PLAINTIFF]?

Plaintiff's Brief at 4 (trial court and suggested answers omitted; italics added).

 We examine Plaintiff's questions mindful of the following standards.

Our standard of review of an order of the trial court overruling or granting preliminary objections is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court. Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

*Joyce v. Erie Ins. Exchange,* 74 A.3d 157, 162 (Pa.Super.2013) (quoting *Feingold v. Hendrzak,* 15 A.3d 937, 941 (Pa.Super.2011)).

This Court has summarized the applicable principles of law as follows.

Generally, to prevail in a negligence case, a plaintiff must demonstrate the following elements: (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) a

causal relationship between the breach and the resulting injury suffered by the plaintiff; and (4) actual loss suffered by the plaintiff. . . .

The concept of negligence *per se* establishes the elements of duty and breach of duty where an individual violates an applicable statute, ordinance, or regulation designed to prevent a public harm. However, a plaintiff, having proven negligence *per se* cannot recover unless it can be proven that such negligence was the proximate cause of the injury suffered.

We have defined negligence *per se* in the following fashion:

[Negligence *per se* is] conduct, whether of action or omission, which may be declared and treated as negligence without any argument or proof as to the particular surrounding circumstances. Pennsylvania recognizes that a violation of a statute or ordinance may serve as the basis for negligence per se. However, a court will not use a statute or regulation as the basis of negligence per se where the purpose of the statute is to secure to individuals the enjoyment of rights or privileges to which they are entitled only as members of the public.

In order to prove a claim based on negligence *per se,* the following four requirements must be met:

(1) The purpose of the statute must be, at least in part, to protect the interest of a group of individuals, as opposed to the public generally;

(2) The statute or regulation must clearly apply to the conduct of the defendant;

(3) The defendant must violate the statute or regulation;

(4) The violation of the statute or regulation must be the proximate cause of the plaintiff's injuries.

*Mahan v. Am–Gard, Inc.,* 841 A.2d 1052, 1058–1059 (Pa.Super.2003) (citations and quotations omitted).

The statute Plaintiff claims that Defendant violated provides as follows.

A person commits a misdemeanor of the second degree if, with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance.

18 Pa.C.S. § 5104.

 The trial court rejected Plaintiff's negligence *per se* claim based upon violation of this statute upon the following analysis: "[f]leeing the scene of a summary arrest, without more, does not create a substantial risk of bodily harm to a police officer. Moreover, [Defendant] did not employ any resistance which forced [Plaintiff] to overcome the resistance with substantial force." Trial Court Opinion, 2/21/2013, at 4. We disagree.

Plaintiff's complaint does not allege merely flight to avoid arrest. Plaintiff alleged that Defendant attempted to prevent Plaintiff from performing his duty by fleeing, **in the middle of the night, through a poorly-lit area of uneven terrain.** Complaint, 7/13/2012, at ¶¶ 4, 6, 9. Accepting these averments as true, and giving Plaintiff the benefit of all reasonable inferences therefrom, the fact finder could reasonably conclude that Defendant's flight created a substantial risk of bodily injury. *See, e.g., Commonwealth v. Lyons,* 382 Pa.Super. 438, 555 A.2d 920, 925 (1989) (holding, *inter alia,* that Lyons' flight from deputies into a cold stream with an uneven bed created a substantial risk of bodily injury). Therefore, it is **not** clear and free from doubt that Plaintiff will be unable to

prove that Defendant violated 18 Pa.C.S. § 5104.

■ Defendant argues his preliminary objections were nonetheless properly granted because the purpose of Section 5104 is not to protect officers specifically, but rather the public in general. Defendant's Brief at 4. Again, we disagree.

Clearly the purpose of the statute is to protect the group of individuals, specifically including public servants, who find themselves in the zone of danger created by the individual preventing the public servant from discharging his or her duty. That the protected group includes bystanders as well as public servants does not make it so general as to prevent the application of Section 5104 in a negligence *per se* claim.

For example, although the criminal code provision against underage drinking "represents an obvious legislative decision to protect both minors **and the public at large** from the perceived deleterious effects of serving alcohol to persons under twenty-one years of age[,]" our Supreme Court held that violation of that statute constituted negligence *per se. Congini by Congini v. Portersville Valve Co.*, 504 Pa. 157, 470 A.2d 515, 518 (1983) (emphasis added) (reversing trial court order sustaining preliminary objections). Similarly, the intention to protect from harm manifested in the statute at issue in this case is more specific than provisions of the motor vehicle code; yet violations of traffic laws constitute negligence *per se. See e.g., Garcia v. Bang*, 375 Pa.Super. 356, 544 A.2d 509, 511 (1988) (holding that passing in a no-passing zone, in violation of the vehicle code, was negligence *per se*); *Bumbarger v. Kaminsky*, 311 Pa.Super. 177, 457 A.2d 552, 554 (1983) ("The law of this Commonwealth is clear that the failure to obey a stop sign is negligence *per se* ....").

In contrast, statutes which this Court has held were too general to support a negligence *per se* claim involve statutes that less clearly indicate an intention to protect specific groups from specific types of harm. *See, e.g., Wagner v. Anzon, Inc.*, 453 Pa.Super. 619, 684 A.2d 570, 574–575 (1996) (holding that there was no negligence *per se* claim based upon violation of Philadelphia Air Management Code, because "the purpose of the Code was to protect the 'atmosphere over the City' of Philadelphia, with ... concomitant benefits to its 'inhabitants.' ").

Thus, we conclude that the purpose of 18 Pa.C.S. § 5104 is to protect the interests of a group of which Plaintiff is a member and applies to Defendant's alleged conduct, and that, accepting the facts alleged in Plaintiff's complaint as true, a fact-finder could reasonably conclude that Defendant violated the statute.

■ We next consider Plaintiff's ordinary negligence claim. "Negligence is the absence of ordinary care that a reasonably prudent person would exercise in the same or similar circumstances." *Merlini ex rel. Merlini v. Gallitzin Water Authority*, 602 Pa. 346, 980 A.2d 502, 506 (2009) (quoting *Martin v. Evans*, 551 Pa. 496, 711 A.2d 458, 461 (1998)). "The primary element in any negligence cause of action is that the defendant owes a duty of care to the plaintiff." *Althaus ex rel. Althaus v. Cohen*, 562 Pa. 547, 756 A.2d 1166, 1168 (2000).

■ The trial court concluded that Defendant owed no duty to Plaintiff because "[t]here was no special relationship" between the parties, Defendant never touched Plaintiff, and Defendant "did not own the property on which the injury occurred." Trial Court Opinion, 2/21/2013, at 5–6. Again, we disagree.

The determination of whether a duty exists in a particular case involves the

weighing of several discrete factors which include: (1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution.

*Id.* at 1169.

The case of *Lindstrom v. City of Corry,* 563 Pa. 579, 763 A.2d 394 (2000), is instructive in the application of the duty factors to the case at hand. *Lindstrom* is essentially the opposite of the instant case: therein it was the fleeing criminal suspect who was injured while police chased him. Our Supreme Court applied the five factors to determine "whether to impose a common law duty of care upon governmental agencies and their agents when a police officer pursues fleeing drivers." *Id.* at 397. On the first factor, the relationship between the parties, the Court noted that police officers are protectors of members of the public, but any duty of protection is lessened when an individual flees rather than comply with a request to stop. *Id.* Regarding the second factor, "[t]he social utility of a police officer's attempt to apprehend a person suspected of violating the law is beyond dispute." *Id.* As for the third factor, the Court acknowledged the risk and foreseeability of injury to a fleeing driver. *Id.* Fourth, the Court noted that "the consequences of imposing a duty upon officers are burdensome, as that may prevent the apprehension of dangerous criminals and further encourage flight." *Id.* Finally, the Court cited the public's interest in ensuring safe streets and empowering police officers to enforce the law. *Id.* Our Supreme Court concluded that the factors on balance did not call for imposing a duty of care under the circumstances. *Id.*

Applying the *Lindstrom* analysis to the converse facts of the instant case, we conclude that the factors favor imposition of a duty of care. The first factor does not support the imposition of a duty, as Defendant had no relationship with Plaintiff. However, (2) the utter dearth of social utility of Defendant's conduct in fleeing from an officer; (3) the obvious risk and foreseeability of possible injury to the pursuing officer; (4) the positive consequences of discouraging flight and encouraging apprehension of criminals; and (5) the public interest in empowering police to enforce the law and keep the communities safe all support the imposition of a duty of care upon Defendant in these circumstances. Accordingly, we conclude that the trial court erred in concluding, accepting the allegations of Plaintiff's complaint as true, that Defendant is entitled to judgment as a matter of law on Plaintiff's negligence claim.

■■■ The only remaining question is whether Plaintiff can show causation. "To determine whether any breach of duty proximately caused a plaintiff's damages, this Court looks to whether a reasonable person would infer that the injury was the natural and probable result of defendant's breach of duty." *Kirschner v. K & L Gates LLP,* 46 A.3d 737, 754 (Pa.Super.2012).

The trial court concluded as a matter of law that Plaintiff's injury "was not a foreseen natural and probable cause of [D]efendant's acts." Trial Court Opinion, 2/21/2013, at 5. "This was not a high speed chase, but pursuit on foot after an unarmed defendant. Defendant did not create a substantial risk of bodily injury; [P]laintiff fell on a pre-existing fault.... [Plaintiff] cannot prove that [D]efendant was the proximate cause of his injury." *Id.*

Again, we disagree. A reasonable person could infer that the fracture to Schemberg's leg sustained upon an unexpected one-foot drop while chasing Defendant, in the dark, over uneven and poorly-lit terrain, was a foreseeable result of Defendant's act of violating Section 5104. *Compare Zanine v. Gallagher*, 345 Pa.Super. 119, 497 A.2d 1332, 1334 (1985) (holding that police officer's suffering a heart attack after engaging in a high-speed car chase with the fleeing defendant was not a foreseeable risk of the defendant's flight) *with Levandoski v. Cone*, 267 Conn. 651, 841 A.2d 208, 216 (2004) ("[C]ommon sense suggests that one who takes off running into the dark to flee from a police officer, who had ordered him to stop, ought to know that the pursuing officer could be injured scrambling through obstacles and over unlit terrain."). Accordingly, the question of causation must go to the factfinder. *Kirschner*, 46 A.3d at 753 ("Unless the evidence is such that reasonable people cannot disagree, the question of whether a defendant's conduct is the cause of the plaintiff's injury or loss is for the jury.").

Because Plaintiff's complaint alleges facts which satisfy the requirements for a claim of negligence *per se, see Mahan*, 841 A.2d at 1058–1059, the trial court erred as a matter of law in granting Defendant's preliminary objections in the nature of a demurrer.

Order reversed. Case remanded for further proceedings consistent with this opinion. Jurisdiction relinquished.

Judge OLSON files a Dissenting Opinion.

**DISSENTING OPINION BY OLSON, J.:**

I respectfully dissent. Karl Schemberg's complaint did not allege sufficient facts to establish a violation of the resisting arrest statute, 18 Pa.C.S.A. § 5104.

Accordingly, because Schemberg did not set forth a viable prima facie cause of action alleging negligence *per se,* I would affirm the trial court order sustaining preliminary objections and dismissing Schemberg's complaint with prejudice. Moreover, as Schemberg's brief fails to challenge the trial court's order sustaining the preliminary objections to his negligence cause of action, said issue is waived.

Schemberg alleged negligence *per se,* and as the majority accurately notes, the following four requirements must be met:

(1) The purpose of the statute must be, at least in part, to protect the interest of a group of individuals, as opposed to the public generally;

(2) The statute or regulation must clearly apply to the conduct of the defendant;

(3) The defendant must violate the statute or regulation;

(4) The violation of the statute or regulation must be the proximate cause of the plaintiff's injuries.

*Mahan v. Am–Gard, Inc.*, 841 A.2d 1052, 1058–1059 (Pa.Super.2003).

At issue herein, 18 Pa.C.S.A. § 5104 provides:

A person commits a misdemeanor of the second degree if, with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance.

18 Pa.C.S.A. § 5104.

Schemberg asks this Court to examine the purpose of Section 5104:

This presents a matter of statutory interpretation, and as this is a purely legal question, our standard of review is *de*

*novo* and scope of review is plenary. The objective of all interpretation and construction of statutes is to ascertain and effectuate the intention of the legislature. Generally, the best indication of the General Assembly's intent is the plain language of the statute. When the words of a statute are clear and free from all ambiguity, they are presumed to be the best indication of legislative intent.

*Allstate Life Ins. Co. v. Commonwealth of Pennsylvania*, 617 Pa. 1, 52 A.3d 1077, 1080 (2012) (citations, brackets and quotations omitted).

As a matter of law, Schemberg has failed to allege James Smicherko violated Section 5104, the third requirement pursuant to *Mahan, supra.* In his complaint, Schemberg alleged, in pertinent part:

\* \* \*

5. After observing [James Smicherko (Smicherko)] urinating in public, [Schemberg] approached [Smicherko] to further investigate [Smicherko's] actions.

6. In response to [Schemberg's] approach, [Smicherko] ran from the scene and away from [Schemberg] in an attempt to avoid [Schemberg's] investigation.

7. [Schemberg] pursued [Smicherko] as [Smicherko] ran away and eventually apprehended [Smicherko] not far from the area where [Smicherko] was observed urinating in public.

8. In pursuing and apprehending [Smicherko], [Schemberg] suffered significant injury including a comminuted, depressed fracture of the lateral tibia plateau of his right leg which required surgery and other substantial medical care, and will continue to require such medical care and treatment into the future.

9. [Schemberg's] injury occurred when he was suddenly caused to drop from a height between twelve (12) to fifteen (15) inches while chasing [Smicherko] in an area that was not well lit.

10. [Schemberg] believes, and therefore avers, that [Smicherko] knew, or should have known, that his actions in running away from [Schemberg] could cause serious injury to [Schemberg].

Complaint, 7/13/2012, at 2.

"[E]vidence of violation of a statute ... may constitute negligence *per se*, irrespective of the criminal penalties contained therein or whether there has been a conviction thereunder." [1] *Hannon v. City of Philadelphia*, 138 Pa.Cmwlth. 166, 587 A.2d 845, 851 (1991), *citing Mecca v. Lukasik*, 366 Pa.Super. 149, 530 A.2d 1334 (1987). However, we have previously determined:

**The intent of [S]ection [5104] is to confine the offense to forcible resistance that involves some substantial danger to the person. As a general rule, therefore, it is not criminal merely to flee arrest.** However, where the circumstances of the flight expose the pursuing officers to substantial danger a [finding of a violation of] resisting arrest is proper. A person resists arrest by conduct which creates a substantial risk of bodily injury to the arresting officer or by conduct which justifies or requires substantial force to overcome the resistance.

*Commonwealth v. Miller*, 327 Pa.Super. 154, 475 A.2d 145, 146 (1984) (citations, quotations, and original emphasis omitted)(emphasis added).

---

1. While a conviction of an offense is not required, the certified record confirms that Smicherko's resisting arrest charge was *nolle prossed.*

After reviewing the allegations set forth in Schemberg's complaint, the trial court concluded:

> Fleeing the scene of a summary arrest, without more, does not create a substantial risk of bodily harm to a police officer. Moreover, [Smicherko] did not employ any resistance which forced [Schemberg] to overcome the resistance with substantial force.

Trial Court Opinion, 2/21/2013, at 4. I agree.

The plain language of Section 5104 requires conduct that "creates a **substantial** risk of bodily injury to the public servant or anyone else." 18 Pa.C.S.A. § 5104 (emphasis added). "Substantial" is defined as "not imaginary or illusory: REAL, TRUE[.]" MERRIAM WEBSTER's COLLIGATE DICTIONARY 1245 (11th ed. 2008). Substantial risk means a strong or real possibility, rather than a remote chance, that a certain result may occur. Here, the trial court correctly held as a matter of law that Smicherko's mere flight did not create a substantial risk of injury.

Moreover, I take issue with the majority's reliance on *Commonwealth v. Lyons,* 382 Pa.Super. 438, 555 A.2d 920, 925 (1989) to support the conclusion that a fact-finder could reasonably believe that Smicherko's flight created a substantial risk of bodily injury. Majority Opinion, at 1074–75. In *Lyons,* a prior panel of this Court determined:

> When the local deputy sheriffs arrived to arrest appellant, he ran into the middle of Lycoming Creek and attempted to swim downstream with the current. The water level of the creek was waist deep and, because it was early spring, the water temperature was frigid. The creek had a slippery streambed and a swift current. Two of the deputy sheriffs went into the creek after appellant. One officer, after three unsuccessful attempts, managed to get a grip of appellant *who was kicking and struggling to get away.* When the other officer then managed to grab appellant's arm, appellant went limp, pulled his feet underneath him, refused to walk, and became rigid. As a result, the two officers literally had to carry him to the bank, losing their balance a few times along the way. The two officers asked appellant to walk, but he refused. When they were within four to five feet of the bank, the two officers who were waiting on the shore, jumped in and together the four officers carried appellant up to the bank where appellant was then handcuffed.

Appellant argues that there was no evidence presented that he, at any time, assaulted or attempted to assault the officers or that he had a weapon. Appellant claims that he was simply fleeing from arrest and that no evidence was introduced which demonstrated that he created a substantial risk of bodily injury to the deputy sheriffs. His arguable claim is inapposite.

[Section 5104] does not require serious bodily injury. Nor does it require actual injury to the arresting officer. Rather, sufficient resistance is established if the arrestee's actions created a substantial risk of bodily injury to the arresting officer. Appellant's struggle with the two deputies in the middle of a frigid stream with a rocky uneven bed was sufficient to meet that requirement.

Moreover, the statute includes the disjunctive phrase "or employs means justifying or requiring substantial force to overcome resistance." Appellant's actions unquestionably fall within the ambit of this portion of the statute. It took four deputy sheriffs to finally subdue appellant. Substantial force was thus required to overcome appellant's resistance to the arrest.

*Commonwealth v. Lyons*, 382 Pa.Super. 438, 555 A.2d 920, 925 (1989) (internal citation omitted) (emphasis in original).

In a later decision, this Court clarified *Lyons,* noting that "under the rather extreme circumstances of that case, appellant's flight had created a substantial risk that, considering the omnipresent danger presented by a creek's uneven, slippery bottom and rapid current, one or more of the officers needed to capture appellant could have incurred bodily injury as a result of being led into the freezing waters." *In Interest of Woodford,* 420 Pa.Super. 179, 616 A.2d 641, 644 (1992). In *Woodford,* a juvenile attempted to steal an off-duty police officer's personal vehicle. From an upstairs window, the officer witnessed the juvenile leaving the area where his parked car was located. The officer hurriedly dressed in regular clothing and attempted to arrest the juvenile himself, despite the presence of an on-duty police officer. The officer approached the juvenile at the juvenile's residence and a struggle ensued. We determined that there was insufficient evidence to adjudicate the juvenile delinquent of resisting arrest. Notably, in distinguishing *Lyons,* this Court opined, "[the officer] **was not deliberately led into an inherently dangerous situation** by [the juvenile], but rather, created a dangerous situation for himself when he chose to vent his personal anger by attacking [the juvenile] in the presence of a group of [juvenile's] friends and relatives." *Id.* (emphasis added).

Taken together, *Lyons* and *Woodford* reveal that mere flight—by itself—will not generally constitute resisting arrest under Section 5104. Our decision in *Lyons* establishes only that flight **may** qualify as resisting arrest where a suspect's selected path of evasion includes inherently dangerous conditions that the suspect knows or should know will pose a substantial risk of injury to the pursuing officer. These factors are not present in this case.

Thus, I believe that even accepting as true Schemberg's averments that Smicherko fled "in the middle of the night, through a poorly-lit area of uneven terrain", a factfinder could not reasonably conclude the flight created a substantial risk of bodily injury. *See* Majority Opinion, at 1074–75, *citing* Complaint, 7/13/2012, at ¶¶ 4, 6, 9. Schemberg's complaint does not allege that Smicherko deliberately led him into an inherently dangerous situation, or created a **substantial** risk, in an effort to resist arrest. This case is in stark contrast to *Lyons* wherein the defendant struggled with police, led them into a frozen creek, went limp, and required four police officers to drag him up an embankment. In my view, based upon my plain reading of Section 5104, the cases interpreting it, and the fact that the instant complaint did not allege that Smicherko deliberately led police into an inherently dangerous situation, Schemberg cannot prove that Smicherko created a substantial risk of bodily injury to support a negligence *per se* cause of action pursuant to Section 5104.

Moreover, this Court has been called upon numerous times to determine the types of acts that require substantial force by police to overcome resistance pursuant to Section 5104. *See Commonwealth v. Clark,* 761 A.2d 190, 193–194 (Pa.Super.2000) (Evidence was sufficient to find that defendant employed means justifying or requiring substantial force to overcome his resistance, so as to support conviction of resisting arrest, where, after being informed that he was under arrest, defendant took fighting stance, told officer "you are going to have to fight me," and was chased down traffic lanes before being apprehended by the officer, who struggled with defendant, and rolled him over on

ground to handcuff him.); *Commonwealth v. McDonald,* 17 A.3d 1282, 1285–1286 (Pa.Super.2011) (Evidence was sufficient to support conviction for resisting arrest; defendant fled after he realized that police had observed him delivering cocaine, defendant led officers on a chase that lasted for several blocks, officers caught up with defendant after he slipped on wet grass, multiple officers were needed to hold defendant on the ground, defendant continued to try to get up, and officers were forced to use a taser to effectuate the arrest.); *Commonwealth v. Lumpkins,* 324 Pa.Super. 8, 471 A.2d 96, 99 (1984) (Evidence that defendant drew his revolver and pointed it at police detectives, that he struck and kicked detectives, creating substantial risk of bodily injury, and that substantial force was needed to overcome resistance of defendant as both detectives attempted to subdue defendant by physical force and fired their weapons at him as he fled, was sufficient to sustain conviction for resisting arrest.); *Commonwealth v. Thompson,* 922 A.2d 926, 928 (Pa.Super.2007) (Evidence that the defendant, who interlocked her arms and legs with her husband, used passive resistance requiring police to use substantial force to overcome provided sufficient evidence to support resisting arrest conviction.); *Commonwealth v. Anderjack,* 271 Pa.Super. 334, 413 A.2d 693, 696 (1979) ("[T]he evidence demonstrated that when Detective Flaherty approached [defendant] the second time, and identified himself and tried to turn off the engine of [defendant's] car, [defendant] backed up the car while the detective was inside it, and sped away, throwing the detective to the ground. This evidence was no doubt evidence of flight to avoid arrest, but it was also evidence that [defendant] had 'create(d) a substantial risk of bodily injury' to the detective[.]"). By comparison, the facts as alleged in this case simply do not support a prima facie case that Schemberg had to employ force to overcome resistance by Smicherko.

Accordingly, reliance on *Lyons* is misplaced and the facts in this case required the dismissal of Schemberg's complaint. Here, as set forth in his complaint, Schemberg observed Smicherko urinating in public and approached him. Smicherko fled to avoid investigation and/or apprehension. Schemberg pursued and eventually apprehended him. In sum, the complaint only alleged flight to avoid arrest, which traditionally falls outside the scope of conduct criminalized by Section 5104. There are no allegations of conduct on Smicherko's part that created a substantial risk of bodily injury to Schemberg or required substantial force to overcome. Schemberg did not allege that he was deliberately led into an inherently dangerous situation. By his own admission, Schemberg conceded that Smicherko was apprehended a short distance from where he was initially seen. Schemberg did not allege a viable, *prima facie* claim that Smicherko violated Section 5104 that supported a cause of action for negligence *per se.* Hence, I would affirm the trial court's order.

Finally, I take issue with the majority's consideration of Schemberg's ordinary negligence claim. *See* Majority Opinion, at 1074–77. In his brief to this Court, Schemberg does not challenge the trial court's order that sustained preliminary objections to his negligence cause of action and, hence, I find the issue waived. On appeal, although Schemberg sporadically references his claim for negligence in his appellate brief, he does not provide any argument or citations to either authority or the record in defense of this claim. *See* Pa.R.A.P. 2119; *Bombar v. West American Ins. Co.,* 932 A.2d 78, 93 (Pa.Super.2007) (failure to develop an argument with citation to and analysis of relevant

authority waives issue on appeal); *In re S.T.S., Jr.,* 76 A.3d 24, 42 (Pa.Super.2013) ("[M]ere issue spotting without analysis or legal citation to support an assertion precludes our appellate review of a matter"[;] an appellate court "is neither obliged, nor even particularly equipped, to develop an argument for a party."). Accordingly, I believe the majority erred in reaching the dismissal of Schemberg's ordinary negligence claim.